**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-01566-MSK-NYW

JORGE BASULTO,

     Plaintiff,

v.

EXACT STAFF, INC. and
ELECTRONIC RECYCLERS, INC.,

     Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
REGARDING DEFENDANT EXACT STAFF'S MOTION TO DISMISS**

---

Magistrate Judge Nina Y. Wang

This matter comes before the court on Defendant Exact Staff, Inc.'s ("Exact Staff" or "Defendant") Motion to Dismiss. [#13, filed August 25, 2015]. The Motion was referred to the undersigned Magistrate Judge pursuant to the Order of Reference dated July 24, 2015 [#4] and memorandum dated September 1, 2015 [#15]. After carefully considering the Motion and related briefing, the entire case file, and the applicable case law, I respectfully RECOMMEND that the Motion to Dismiss be DENIED.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Jorge Basulto ("Plaintiff" or "Mr. Basulto") initiated this lawsuit by filing a Complaint on July 23, 2015 asserting a single claim for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). [#1]. The Complaint seeks declaratory relief and monetary damages in the form of back pay, front pay, compensatory

damages for emotional distress, humiliation, and inconvenience, punitive damages, pre- and post-judgment interest, and attorneys' fees and costs.  [*Id.* at 1 and ¶ 69].

The following facts are drawn from the Complaint, and are taken as true for the purposes of considering the instant Motion.  Exact Staff is a staffing agency "that provides jobs and staffing services for its clients," and has its principal place of business in Woodland Hills, California [#1 at ¶¶ 7, 8].  Defendant Electronic Recyclers, Inc. ("Electronic Recyclers") "is engaged in the business of recycling and/or repairing electronic equipment and appliances," and is a Colorado corporation with its principal place of business in Fresno, California.  [*Id.* at ¶¶ 9, 10].

In March 2013, Mr. Basulto applied for employment with Exact Staff, and on April 9, 2013, Exact Staff hired Plaintiff to work as an On-Site Supervisory/Human Resources Representative.  [#1 at ¶¶ 16, 17].  At this time, Exact Staff was providing staffing and managerial services to Electronic Recyclers.  [*Id.* at ¶ 19].  Exact Staff arranged for Plaintiff to interview with Electronic Recyclers for an On-Site Supervisory/Human Resources Representative position.  [*Id.* at ¶ 20].  Following an interview with Joe Haight, the Commodities Manager and Assistant Plant Manager at Electronic Recyclers, Plaintiff was hired for the position.  [*Id.* at ¶ 21].  As the On-Site Supervisor/Human Resources Representative, Mr. Basulto selected candidates to fill available positions at the Electronic Recyclers plant.  [*Id.* at ¶ 25].

During Mr. Basulto's first week of employment with Electronic Recyclers, Mr. Haight and the plant manager, Dean Holter, told Plaintiff that "Electronic Recyclers did not want female employees working at the plant," and subsequently referred to women generally as "broom pushers."  [#1 at ¶¶ 26, 27].  Mr. Basulto simultaneously observed that Electronic Recyclers had a "disproportionately large number of men working at the plant."  [*Id.* at ¶ 30].  When Plaintiff

attempted to protest that women are equally capable of performing jobs at the plant, Mr. Haight and Mr. Holter responded that Plaintiff "did not understand the job well enough and, as a result, could not understand why females could not perform the job." [*Id.* at ¶ 29].

At the end of the first week of employment, Mr. Basulto hired Antenea Brown to work as an Orderly at the plant. [#1 at ¶ 31]. An Orderly is responsible for various cleaning tasks in the office and plant area. [*Id.* at ¶ 32]. When Plaintiff subsequently informed Mr. Haight and Mr. Holter of the hire, they responded with hesitation and stated that she would be limited to performing the job's functions within the office and would not be permitted to work inside the plant. [*Id.* at ¶ 35]. Mr. Basulto reported these comments to Toni Kemp, Exact Staff's National Human Resources Manager, who asked if she could discuss the remarks with Plaintiff the following week. [*Id.* at ¶ 37]. Ms. Kemp also shared with Plaintiff that "there had been some issues with discrimination by Electronic Recyclers at the plant." [*Id.*]

The following week, Mr. Basulto interviewed and hired Amber Deciedue for a second Orderly position that included cleaning responsibilities within the plant. [#1 at ¶¶ 38, 39]. Mr. Haight was upset when he learned of the hire, and told Plaintiff, "you need to know the duties of the position before you hire a female employee." [*Id.* at ¶ 41]. Mr. Basulto responded that "Ms. Deciedue was qualified for the job and that he did not understand why Mr. Haight was so upset over the hiring decision," and that he "intended to comply with the law and would not discriminate against female applicants." [*Id.* at ¶¶ 42, 43].

On April 22, 2013, Ms. Deciedue began work at Electronic Recyclers. [#1 at ¶ 44]. That same day, Lori Johnson, a Safety Officer at Electronic Recyclers, told Mr. Basulto that male employees in the plant were commenting that they did not want to work with a female co-worker. [*Id.* at ¶ 45]. Approximately 45 minutes after Ms. Deciedue's first day of work

3

commenced, Mr. Holter complained to Mr. Basulto that her "pace" in performing the Orderly job was too slow. [*Id.* at ¶ 46]. Mr. Basulto responded that he thought she was performing satisfactorily. [*Id.* at ¶ 47]. Later that day, Mr. Holter informed Plaintiff that he had decided to fire Ms. Deceidue, but would retain two recently hired male Orderlies. [*Id.* at ¶ 48].

Mr. Basulto advised Ms. Kemp of the exchange in the following email:

> Today it was brought to my attention by our safety officer Lori, that while we had a female candidate doing her working interview, [a] few of the male employees were making comments, and one of them told Lori that he did not want to work with a female employee.  In the short time I have been in the office, I have noticed there has been a lot of resistance in diversifying our work force. I believe our facility is not giving an equal opportunity to females as they are to male applicants. Our facility is willing to take male applicants with felonies and others who are currently on parole/probation but they are not willing to give a chance to a female candidate with a much better background the same opportunity.  I understand this has been the case for a very long time. But these are not the hiring practices that I follow. I really think this issue should be addressed with all those concerned.  Today for example we had 2 male working interviews and 1 female working interview. The 2 males were given the approval by [D]ean, however, the female who in my opinion appeared to be working as hard as any other orderly, was rejected, supposedly for not working fast enough. If that is the case than the current male orderly needs to be removed because as per what I have seen he violates safety rules and does not clean as fast either.  This is an important matter which needs to be addressed, because if this is the way the facility wishes to hire employees, then I'd rather not have any part in it.

[#1 at ¶ 49].  Ms. Kemp responded the same day that she appreciated Plaintiff's concerns and would raise the issue with "[Electronic Recyclers] corporate."  [*Id.* at ¶ 50].  On April 23, 2013, Ms. Brown, Mr. Basulto's first female hire, reported to Plaintiff that Mr. Holter had told her "not to get too comfortable" because she would not be working at the plant much longer.  [*Id.* at ¶ 51]. Ms. Brown stated her discomfort to Plaintiff and asked to submit her two weeks of notice.  [*Id.* at ¶ 52].  Mr. Basulto asked Ms. Brown to give him an opportunity to address her complaints before she resigned, and again raised his concerns to Ms. Kemp.  [*Id.* at ¶¶ 53, 54].

Plaintiff and Ms. Kemp discussed his specific concerns during a telephone conversation held later on April 23. [*Id.* at ¶ 58]. Ultimately, Ms. Kemp thanked Plaintiff for alerting her to the practices within the plant and advised that she had been happy with his performance, but informed Plaintiff that "she had to let [him] go because Electronic Recyclers had asked that he be removed from the plant." [*Id.* at ¶¶ 57, 59, 60].

On April 30, 2013, Mr. Basulto filed a Charge of Discrimination alleging unlawful retaliation with the Equal Employment Opportunity Commission ("EEOC") as to each Defendant. [#18-1]. Plaintiff asserts that he filed the Complaint within 90 days of receiving the Notice of Right to Sue letter from the EEOC. [#1 at ¶¶ 4, 5].

Electronic Recyclers filed an Answer to the Complaint on August 18, 2015. [#11]. Exact Staff filed the pending Motion to Dismiss on August 25, 2015. [#13]. On September 15, 2015, this court held a Scheduling Conference and entered a Scheduling Order. [#17, #19]. Plaintiff filed a Response to the Motion to Dismiss on September 16, 2015 [#18] and Exact Staff filed a Reply on September 23, 2015. [#27]. The instant Motion is ripe and ready for disposition, and oral argument would not materially assist the court in its resolution.

## STANDARD OF REVIEW

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of

the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

### I.   Retaliation

#### A.   Legal Standard

Title VII makes it unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1)). Title VII prohibits employers from retaliating against employees who "opposed any practice made an unlawful employment practice by [Title VII]," or who "made a charge…under [Title VII]." 42 U.S.C. § 2000e–3(a). *See also Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1205 (10th Cir. 2000). A plaintiff bringing a retaliation claim must establish that

retaliation played a part in the employment decision and may choose to satisfy this burden by demonstrating the necessary animus directly or indirectly. *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011) (quoting *Fye v. Okla. Corp. Comm'n,* 516 F.3d 1217, 1224–25 (10th Cir. 2008)). "Under the direct/mixed motives approach, the plaintiff may directly show that retaliatory animus played a motivating part in the employment decision," and may use direct or circumstantial evidence, so long as he or she demonstrates that "the alleged retaliatory motive actually relates to the question of discrimination in the *particular* employment decision." *Id.* at 998-99 (citations omitted). Circumstantial evidence sufficient to show retaliation directly may consist of "conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged [retaliatory] attitude." *Id.* (quoting *Thomas v. Denny's, Inc.,* 111 F.3d 1506, 1512 (10th Cir. 1997)).

Where direct evidence, or circumstantial evidence that is "tied directly to the retaliatory motive," is not available, Plaintiff may employ the three-part framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to prove retaliation indirectly. *Twigg*, 659 F.3d at 998 (citing *Fye,* 516 F.3d at 1225, 1227). Under *McDonnell Douglas*, a plaintiff must first demonstrate a *prima facie* case of retaliation by showing that (1) he engaged in protected opposition to discrimination, (2) his employer subjected him to an adverse employment action subsequent to the protected activity, and (3) a causal connection exists between the protected activity and the adverse employment action. *Pastran*, 210 F.3d at 1205 (citing *McGarry v. Board of County Comm'rs of the County of Pitkin,* 175 F.3d 1193, 1201 (10th Cir. 1999)). *See also Carney v. City and County of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008) (citation omitted). Although Plaintiff does not have to establish a *prima facie* case of retaliation in his Complaint to survive a motion to dismiss, the court nonetheless

7

looks to "the elements of each alleged cause of action to help determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012).[1]

Mr. Basulto claims that he was satisfactorily performing his job as On-Site Supervisory/Human Resources Representative at the Electronic Recyclers' plant, and that Electronic Recyclers removed him from that position because he had complained about unlawful discrimination. [#1 at ¶¶ 62-65]. Plaintiff also claims that "[u]pon information and belief, Exact Staff removed Mr. Basulto at the request of Electronic Recyclers," and "[a]s a result of his removal from the plant, Exact Staff discharged [him] from his employment." [*Id.* at ¶¶ 66, 67]. Exact Staff argues that Plaintiff has failed to state a claim for retaliation against it because it did not control whether Electronic Recyclers retained or terminated Plaintiff. [#13 at 2]. More specifically, Exact Staff contends that Plaintiff has not alleged it took a materially adverse action in response to Plaintiff's complaints of gender discrimination, and that employment agencies' clients, rather than the agencies, qualify as the employer for purposes of Title VII retaliation claims. [#13 at 5-6]. For the purposes of this Recommendation that Plaintiff's allegations as to Exact Staff, this court considers whether Plaintiff has set forth a plausible claim for retaliation as to this Defendant by considering the elements of a *prima facie* case under *McDonnell-Douglas*.

B. Application of Law

As an initial matter, a *prima facie* case of retaliation under Title VII requires proof that the defendant was the plaintiff's employer. *See* 42 U.S.C. § 2000e–3(a). *See also Knitter v. Corvias Military Living, LLC,* 758 F.3d 1214, 1225 (10th Cir. 2014) ("If a plaintiff cannot meet

---

[1] The scope of Title VII's retaliation provision is broader than that of Title VII's substantive discrimination provision, and a retaliation claim may survive independent of a discrimination claim. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 53-54 (2006). *See also Sanchez v. Denver Public Schools*, 164 F.3d 527, 533 (10th Cir. 1998) (citing *Jeffries v. Kansas,* 147 F.3d 1220, 1232 (10th Cir. 1998)).

her burden to prove the defendant was her employer, her wage discrimination and retaliatory termination claims necessarily fail."). Plaintiff asserts that he was employed by both Electronic Recyclers and Exact Staff; and Exact Staff concedes in the Motion to Dismiss that it hired Plaintiff into a temporary associate position and later arranged for him to interview with Electronic Recyclers. [#13 at 2]. *See Knitter*, 758 F.3d at 1226-27 (recognizing three tests used in the Tenth Circuit to determine whether a defendant is an employer, including the "joint employer test," applicable where two entities "share or co-determine those matters governing the essential terms and conditions of employment."). Therefore, for the purposes of considering the instant Motion to Dismiss, the court will accept as true that Exact Staff and Electronic Recyclers are joint employers.[2]

"The first prerequisite of any retaliation claim is the plaintiff-employee's *protected opposition to unlawful discrimination,* prompting the employer's retaliatory conduct." *Curry v. Mazzio's Corp.*, 72 F. App'x 759, 762 (10th Cir. 2003) (emphasis in original) (citing *Hysten v. Burlington Northern and Santa Fe Ry. Co.,* 296 F.3d 1177, 1183 (10th Cir. 2002)). Plaintiff alleges he engaged in protected activity when he complained to Ms. Kemp during the first week of his employment with Electronic Recyclers about Mr. Haight's and Mr. Holter's discriminatory statements regarding the hiring of female applicants and Ms. Brown [#1 at ¶¶ 26, 31, 36]; when he advised Ms. Kemp by email on April 22, 2013 that Electronic Recyclers "is not giving an equal opportunity to females as they are to male applicants," and wrote that "if this is the way the

---

[2] This court does not find in this Recommendation that Defendants are joint employers as defined by the *Knitter* court; indeed, courts faced with the question typically formulate a determination at the summary judgment stage. *But see Park v. Fiserv Trust Co.*, No. 10–cv–00189–PAB–CBS, 2010 WL 5093796, at * 2 (D. Colo. September 30, 2010) (resolving employer question on Rule 12(b)(6) motion because plaintiff failed to differentiate between the potential employer defendants and their conduct and asserted no allegations that any of the defendants co-determined the essential terms and conditions of employment).

facility wishes to hire employees, then I'd rather not have any part of it," [*id.* at ¶ 49]; and on April 23, 2013 when he "reiterated his concerns about gender discrimination at the plant and the equal employment opportunity training was needed [sic] to address the discriminatory work environment to which female applicants and employees were subjected." [*Id.* at ¶ 54]. Informal complaints to superiors constitute protected activity, as does sending a letter to the employer complaining of retaliation. *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1255 (10th Cir. 2001) (citations omitted).[3]

With respect to the second prong of the *prima facie* analysis, "[a]n adverse employment action includes acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Dick v. Phone Directories Co.,* 397 F.3d 1256, 1268 (10th Cir. 2005). The Tenth Circuit "liberally define[s] the phrase 'adverse employment action,'" and "[o]ne factor that strongly indicates a challenged action is an 'adverse employment action' is that the action causes harm to future employment prospects." *Dunn v. Shinseki*, 71 F. Supp. 3d 1188, 1191 (D. Colo. 2014) (quoting *Hillig v. Rumsfeld,* 381 F.3d 1028, 1031 (10th Cir. 2004)). In any event, the termination of employment is "clearly an adverse employment action." *See, e.g., Fye*, 516 F.3d at 1218. Exact Staff does not dispute that such is the state of the law

---

[3] It is of no consequence to his retaliation claim that Plaintiff may be unable to prevail on a Title VII discrimination claim on the basis that he was made to work in an environment hostile to women, so long as he alleges that he became the victim of an adverse employment action as a result of his opposition to what he reasonably perceived as conduct violative of Title VII. *See* 42 U.S.C. § 2000e-3(a). *See also Twigg*, 659 F.3d at 997-98 ("[the Tenth Circuit] has recognized that an employee who believes that she has been retaliated against because of her efforts to vindicate the rights of a minority coworker may bring an action against her employer under 42 U.S.C. § 1981" and "the principles set forth in Title VII retaliation cases apply with equal force in § 1981 retaliation cases"); *Burlington N. & Santa Fe Ry. Co.,* 548 U.S. at 63) ("The substantive [anti-discrimination] provision seeks to prevent injury to individuals based on who they are, *i.e.,* their status. The anti-retaliation provision seeks to prevent harm to individuals based on what they do, *i.e.,* their conduct.")).

[#27 at 1-2], but contends that as a staffing company, it "did not have the power to control Plaintiff's assignment with [Electronic Recyclers] or the power to terminate Plaintiff from his temporary assignment at [Electronic Recyclers]." [#13 at 2]. Exact Staff further contends that Plaintiff has alleged only that Electronic Recyclers discharged him. [*Id.* at 2].

This court acknowledges that while the Tenth Circuit has not yet squarely addressed the role of an employment placement agency in Title VII litigation, courts in this and other circuits have concluded that such agencies are not liable for ensuing adverse employment action taken by the employer once the agency places the individual with the employer. *See Freeman v. Kansas*, 128 F. Supp. 2d 1311, 1316 (D. Kan. 2001) (citing *Reynolds v. CSX Transp., Inc.,* 115 F.3d 860, 869 n.12 (11th Cir. 1997) (holding that temporary employment agency's client qualified as employer of the worker assigned to it for purposes of a Title VII retaliation claim)). *See also Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 611 F. Supp. 344, 348–49 (S.D.N.Y. 1984) (finding temporary employment agency's client was liable under Title VII because the client exercised sufficient control over the means and manner of the worker's performance); *McQueen v. Wells Fargo Home Mortgage*, 955 F. Supp. 2d 1256, 1271-72 (N.D. Ala. 2013) (granting temporary placement agency's motion to dismiss in Title VII action after determining that employer, not agency, made decision to terminate plaintiff). However, and despite Exact Staff's argument to the contrary, Plaintiff alleges that both Electronic Recyclers *and* Exact Staff terminated him following his complaints regarding the alleged gender discrimination. [#1 at ¶¶ 60, 67]. Exact Staff asserts in the Motion to Dismiss that "when a client terminates an associate assignment, the associate remains employed with Exact Staff and continues to be eligible for placement at other client facilities unless the employment relationship is terminated by the temporary associate by request or failure to call in for availability, or by Exact Staff." [#13 at 2].

11

Indeed, Plaintiff alleges in his Response that Exact Staff failed to place him "in another temporary position at a different Exact Staff client," and re-asserts that Exact Staff ended its employment relationship with him after Electronic Recyclers asked that he be removed from the plant. [#18 at 2].

In light of its obligation to accept as true all well-pleaded factual allegations and view those allegations in the light most favorable to the plaintiff, *see Casanova*, 595 F.3d at 1124, this court is not persuaded that dismissal is appropriate at this stage. Mr. Basulto specifically alleges that Ms. Kemp, National Human Resources Manager at Exact Staff [#1 at ¶ 36], told him that "she had to let Mr. Basulto go" because Electronic Recyclers had asked that he be removed from the plant. [*Id.* at ¶ 60]. Plaintiff also specifically alleges that "[a]s a result of his removal from the [Electronic Recyclers] plant, Exact Staff discharged Mr. Basulto from his employment. [*Id.* at ¶¶ 65-67]. Plaintiff has sufficiently alleged that both Defendants employed him and then terminated his employment following his protected activity. In so finding, the court specifically does not pass on whether Plaintiff can ultimately prevail on his claim for retaliation against Exact Staff. Rather, this court concludes that based on the record currently before it, Exact Staff's argument regarding the duration of its relationship with Plaintiff, or any argument disputing its status as Plaintiff's employer, is better suited for determination after further factual development.[4]

---

[4] Exact Staff attached to its Motion to Dismiss an exhibit which it asserts is an email from Plaintiff resigning his position with Defendant. *See* [#13-1]. Plaintiff disputes that the email is a letter of resignation and requests that the court convert the Motion to Dismiss into one for summary judgment and provide Plaintiff with an opportunity to submit evidence should it decide to consider the email. Because this court declines to take the email into consideration in the deliberations included herein, it similarly declines to convert the Motion and need not provide Plaintiff additional time to submit supplemental briefing.

Finally, as to the third prong of the *prima facie* analysis, because the adverse action followed the last-in-time protected conduct by a matter of hours [#1 at ¶¶ 51-60], a causal connection is established by temporal proximity.  *See O'Neal*, 237 F.3d at 1255 (causal connection established by adverse action that followed the protected conduct by one day).  *See also Burrus v. United Tel. Co. of Kan., Inc.,* 683 F.2d 339, 343 (10th Cir. 1982) (A causal connection may be shown by "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.").  Accordingly, I find that Plaintiff has sufficiently pled a claim for retaliation that is adequate to survive dismissal at this stage.

## II.     Duty to Protect

Mr. Basulto raises for the first time in his Response to the Motion to Dismiss a claim that Exact Staff is liable under a "duty to protect" theory for failing to "undertake prompt corrective measures within its control," when it knew or should have known about its client's discriminatory practices. [#18 at 5 (citing Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed By Temporary Employment Agencies and Other Staffing Firms (EEOC, No. 915.002, December 3, 1997)].  Plaintiff asserts that "Exact Staff's failure to engage in corrective measures raises an additional, plausible claim for relief that is supported by [his] Complaint," [*id.* at 7], and cites a recent opinion from this District for support.  *See Byorick v. CAS, Inc.*, --- F. Supp. 3d ----, 2015 WL 4113727, *2-4 (D. Colo. July 8, 2015) (Martinez, J.).  In *Byorick*, the court recognized that the Tenth Circuit has not yet adopted the "duty to protect" theory, but nonetheless relied on the EEOC Enforcement Guidance in determining that the theory of liability is cognizable in this jurisdiction.  *Id.*  In so finding, the court denied the defendant's motion to dismiss on the basis that a joint employer may be "liable under Title VII based on its

13

co-employer's discriminatory conduct where it participated in the discrimination, or where it knew or reasonably should have known of the discrimination but failed to take prompt corrective measures within its control," and that plaintiff's allegations supported the claim. *Id.*

I decline to consider whether the duty to protect theory prevents dismissal because I find that dismissal is not appropriate, even absent such theory, and because Plaintiff did not raise a claim based on the violation of the duty to protect in the Complaint. [#1]. *See, e.g., Montoya v. Newman*, --- F. Supp. 3d. ----, 2015 WL 4456194, *9 (D. Colo. July 21, 2015) (noting courts generally do not consider claims raised for the first time in a response to a dispositive motion) (citing *Lawmaster v. Ward,* 125 F.3d 1341, 1346 (10th Cir. 1997)).

## CONCLUSION

For the foregoing reasons, this court respectfully **RECOMMENDS** that the Motion to Dismiss [#13] be **DENIED**.[5]

---

[5] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

15

DATED: January 6, 2016                    BY THE COURT:

                                          s/Nina Y. Wang_____
                                          United States Magistrate Judge